Devin H. Fok (SBN 256599)
Joseph Lee, Of Counsel (SBN 249435)
**DHF LAW, P.C.**
234 E. Colorado Blvd., 8th Floor
Pasadena, CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023
devin@devinfoklaw.com

Joshua E. Kim (SBN 257260)
**A NEW WAY OF LIFE REENTRY PROJECT**
9512 S. Central Ave.
Los Angeles, CA 90002
Telephone: (323) 563-3575 Ext. 34
Facsimile: (323) 563-3445
joshua@anewwayoflife.org

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS X. MIRAMONTES, individually, and as a representatives of the class, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. HEALTHWORKS, INC.; and DOES 1-10 inclusive, <br> Defendants. | CASE NO.: 2:15-CV-05689-SJO-AFM <br><br> **MOTION FOR PRELIMINARY APPROVAL** <br><br> Judge:  Hon. S. James Otero <br><br> Hearing Date: October 24, 2016 <br> Time: 10:00 a.m. <br> Location: Courtroom 1, Spring Street |

Now come the Plaintiff, by and through counsel hereby move the Court pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, and approval of form and manner of notice. The Plaintiff seeks an Order:

1) Conditionally certifying a Settlement Class comprised of the Settlement Class Members;

2) Preliminarily approving the Settlement Agreement and Release;

3) Approving the proposed Notices of Class Action Settlement;

4) Certifying Plaintiff Jesus X. Miramontes as Class Representatives;

5) Appointing Plaintiff's counsel as Class Counsel; and

6) Appointing a Settlement Administrator;

A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted.

DATED: September 24, 2016          DEVIN H. FOK ESQ.
                                   DHF LAW, P.C.

                          By: ___/s/ Devin H. Fok_____
                                   Devin H. Fok
                                   Attorney for Plaintiff

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.      INTRODUCTION ............................................................................................. 1

II.     PLAINTIFF'S CLAIMS ................................................................................. 2

III.    THE LITIGATION AND SETTLEMENT OF THE ACTION ......................... 3

   A.    Federal FCRA Claims .................................................................................. 3

   B.    California CCRRA and Labor Code Claims ................................................. 4

   C.    Settlement Class ........................................................................................... 5

   D.    Discovery ...................................................................................................... 6

   E.    The Payment Structure ................................................................................. 7

   F.    PAGA Payment ............................................................................................ 8

   G.    Notice and Opt-Out ...................................................................................... 8

   H.    Attorney's Fees and Expenses and a Service Award to the Class
Representative ............................................................................................... 9

   I.    *Cy Pres* Recipient ......................................................................................... 9

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................... 9

   A.    Rule 23(a) Requirements ............................................................................ 10

   a.    Numerosity .................................................................................................. 10

   b.    Commonality ............................................................................................... 11

   c.    Typicality .................................................................................................... 12

   d.    Adequacy of Representation ....................................................................... 13

   B.    Rule 23(b)(3) Requirements ....................................................................... 13

   C.    The Proposed Settlement More Than Satisfies the Standard for Preliminary
Approval ..................................................................................................... 15

i

a.     The Settlement Is the Product of Serious, Informed, Non-Collusive

Negotiations ...................................................................................... 16

b.     The Settlement Is Adequate and Reasonable ................................. 17

D.     The Court Should Approve Dissemination of the Proposed Class Notice .... 18

V.     CONCLUSION ................................................................................ 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (June 25, 1997)…………….............................................17, 21

*Ashmus v. Calderon*
    935 F.Supp. 1048 (N.D. Cal. June 4, 1996)…………….............................18

*Caltabiano v. BSB Bank & Trust Co.*
    387 F.Supp.2d 135 (E.D.N.Y. Aug. 8, 2005)…………….........................22

*Clark v. Experian Info. Solutions, Inc.*
    2002 U.S.Dist.LEXIS 20410 (D.S.C. June 26, 2002)………….................18

*Egge v. Healthspan Services Co.*
    208 F.R.D. 265 (D. Minn. May 16, 2002)…………..................................22

*Gen. Tel. Co. of Sw. v. Falcon*
    457 U.S. 147 (June 14, 1982)……………..............................................17, 19

*Gutierrez v. Wells Fargo Bank, N.A.*
    2008 W.L. 4279550 (N.D. Cal. Sept. 11, 2008)…………….......................21

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011, 1022 (9th Cir. June 9, 1998)…………….....................21, 24

*Jordan v. Los Angeles County*
    669 F.2d 1311 (9th Cir. Feb. 4, 1982)……………....................................18

*Legge v. Nextel Communications, Inc.*
    2004 WL 5235587 (C.D. Cal. June 25, 2004)……………........17, 18, 19, 21

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. Apr. 11, 2001)…………….....................................21

*Macarz v. Transworld Systems, Inc.*
    193 F.R.D. 46 (D. Conn. Apr. 18, 2000)……………..................................22

*Pick-Up Truck Fuel Tank Prods. Liability Litig.*
    55 F.3d 768 (3rd Cir. Apr. 17, 1995).........................................................16

*Reardon v. ClosetMaid*
    2013 U.S.Dist.LEXIS 169821 (W.D. Pa. Dec. 2, 2013)……………....19, 23

*Riker v. Gibbons*
    2010 WL 4366012 (D. Nev. Oct. 28, 2010)…………….............................24

*Singleton v. Domino's Pizza*
    976 F.Supp.2d 665 (D. Md. Jan. 25, 2012)……………........................19, 23

*Wal-Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541 (June 20, 2011)…………….................................................18
*Weber v. Goodman*
    9 F.Supp.2d 163 (E.D.N.Y. Apr. 17, 1998)…………...........................22
*White v. Experian Info. Solutions, Inc.*
    803 F.Supp.2d 1086 (C.D. Cal. 2011)…………………………………..17

**Statutes**

15 U.S.C. §1681b(b)(3)(A)………………………………………………...8, 11, 13
15 U.S.C. §1681n……………………………………………...…………...11, 22
15 U.S.C. §1681n(a)(1)(A)……………………………………………....…11, 24
15 U.S.C. §1681o(a)……………………………………………...……………22
15 U.S.C. §1681o(a)(1)....………………………………………...…………….24
Cal. Lab. C. §1024.5…………………………………………………..8, 11, 12, 13, 14
Cal. Lab. C. §1024.5(a)(1)-(8)……………………………………..8, 10, 12, 14
Fed. R. Civ. P. 23(a)……………………………………………………........17
Fed. R. Civ. P. 23(a)(1)………………………………………………………..17
Fed. R. Civ. P. 23(a)(2)………………………………………………………..18
Fed. R. Civ. P. 23(b)(3)………………………………………………...20, 21, 22
Fed. R. Civ. P. 23(b)(3)(A)………………………………………………… 22
Fed. R. Civ. P. 23(b)(3)(B)………………………………………………… 22
Fed. R. Civ. P. 23(b)(3)(C)………………………………………………… 22
Fed. R. Civ. P. 23(c)(2)(B)………………………………………………… 25
Fed. R. Civ. P. 23(e)(2)………………………………………………………..9
H.R. Rep. 103-486………………………………………………………………..11

1

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3

## I.   <u>INTRODUCTION</u>

4

5      Plaintiff Jesus X. Miramontes, individually and on behalf of the Settlement

6  Class seeks preliminary approval of the proposed Settlement Agreement with

7  Defendant U.S. Healthworks, Inc. ("Defendant" or "USHW"). Plaintiff alleges

8  various state and federal statutory violations in connection with Defendant's

9  procurement of employment background check reports[1] and its systematic failure to

10  provide notices in the form and manner that is compliant with the FCRA (Fair Credit

11  Reporting Act, 15 U.S.C. §1681 *et seq*) and the CCRAA (California Consumer Credit

12  Reporting Agencies Act, Civ. C. §1785 *et seq.*).

13      Specifically, Defendant failed to provide a stand-alone disclosure consisting

14  solely of the disclosure that "a consumer report will be procured for employment

15  purposes" in violation of 15 U.S.C. §1681b(b)(2)(A)(i). Defendant also failed to

16  provide consumers with a copy of their report and a reasonable opportunity to dispute

17  the information **before** taking adverse action in whole or in part of the basis of the

18  report. 15 U.S.C. §1681b(b)(3)(A).

19      Moreover, Defendant procured not only criminal history reports but also

20  employment credit reports. In California, this practice was made illegal on January 1,

21  2012 under Lab. C. §1024.5. Although there are some limited exceptions, Plaintiff

22  alleges that none of the positions offered by Defendant during the relevant class

23  period fell within one of these enumerated categories. *See* Lab. C. §1024.5(a)(1)-(8).

24      Moreover, even if Defendant can successfully argue that all of the employment

25  credit reports it procured during the relevant class period fell within the exceptions, it

26

27  _____

[1] They are defined as "consumer reports" within the meaning of the Fair Credit

28  Reporting Act ("FCRA" 15 U.S.C. §1681 *et seq.*). *See* Definition at 15 U.S.C. §1681a(d).

1

violated the CCRAA by failing to provide the required disclosure prior to procuring said credit reports. *See* Civ. C. §1785.20.5.

During the relevant time period, Defendant utilized a single vendor, ADP, Inc. to procure employment background check reports and furnish notices to job applicants. ADP, Inc. used the same notices and procurement procedures for all of Defendant's job applicants. Plaintiff has discovered no variations in its practices with respect to individual job applicants. Accordingly, Plaintiff believes that this action is suitable for class settlement.

The Settlement Agreement between Plaintiff and Defendant (collectively, the "parties"), if approved, will resolve all claims of the Plaintiffs and all members of the class in exchange for Defendant's agreement to pay $400,000 into a common settlement fund. Declaration of Devin H. Fok ("Fok Decl.") Ex. 1, Stipulation and Settlement of Class Action Claims ("SA"), P.3, ¶1.1.13. The settlement is a ***claims-paid*** process involving no reversion. SA, P. 7, ¶II.K. The class size is approximately 4,381 members. SA, P. 15, ¶IX.9.1 However, in the event that the class size exceeds 4,500, Plaintiff will have the option to terminate the settlement. SA, P.23, ¶XI.11.2.

The identity of the class members are ascertainable and have been identified by Defendant. The proposed settlement of this action is the product of hard-fought and lengthy arm's-length negotiations by experienced and informed counsel, and warrants preliminary approval, as the terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## II.  **PLAINTIFF'S CLAIMS**

On June 5, 2014 Plaintiff was extended a written offer of employment by Defendant to work as a medical assistant. Fok Decl., Ex. 2. On June 10, 2014, Defendant procured an employment background check report containing information

related to his credit and criminal history[2]. Fok Decl., Ex. 3. The report disclosed various pieces of adverse credit and criminal history information. Based on the information disclosed in the report, Defendant rescinded its job offer.

However, Defendant never provided Plaintiff with a copy of his consumer report before the revocation of his employment offer. It was not until after his attorneys made a formal request did Plaintiff ultimately receive a copy of his consumer report. Plaintiff alleges that a medical assistant position does not fall within any of the enumerated positions for which a credit report may be procured. *See* Lab. C. §1024.5(a)(1)-(8). Moreover, even if Defendant could have legally procured Plaintiff's consumer report, Defendant failed to provide the specific statutory basis for the procurement of the same as required under Civ. C. §1785.20.5.

## III.    THE LITIGATION AND SETTLEMENT OF THE ACTION

### A. Federal FCRA Claims

Under the FCRA, employers can freely procure and use employment background check reports provided that they follow two strict procedural requirements. First, the consumer must be notified by clear, conspicuous, and stand-alone disclosure informing the applicant that a consumer report for employment purposes will be procured. 15 U.S.C. §1681b(b)(2).  Plaintiff alleges that Defendant's disclosures were neither, clear, nor stand-alone as they contained extraneous information and were made as part of the employment application. *See* Fok Decl., Ex. 4., P.3-7; *Milbourne v. JRK Residential Am. LLC*, 92 F. Supp. 3d 425, 433. (E.D. Va. 2015) (the notices must contain only the mandated disclosures and nothing else);

---

[2] Plaintiff was previously convicted of driving without a license and vandalism. Both convictions occurred during Plaintiff's early twenties and they have been expunged or dismissed pursuant to California Penal Code §1023.4 following the his application with Defendant.

*Woods v. Caremark PHC, L.L.C.*, 2015 WL 6742124, at \*2 (W.D. Mo. 2015) (finding disclosure to violate the FCRA when it contained an overbroad authorization and state-specific notices).

Moreover, whenever adverse action is contemplated in whole or in part on the basis of information disclosed in a consumer report, the employer must provide the consumer with a copy of his report and a notice of rights under the FCRA that is compliant with 15 U.S.C. §1681b(b)(3)(A). The notice mandated under this requirement is commonly referred to as "pre-adverse action notice." The idea behind this notice is to allow the consumer an opportunity to review and dispute information in his/her consumer report before the employment opportunity is lost. *See Reardon v. ClosetMaid*, 2013 U.S.Dist.LEXIS 169821, \*43 (W.D. Pa. Dec. 2, 2013) ("*Reardon*") citing H.R. Rep. 103-486 at 40 (1994). Here, Defendant failed to provide Plaintiff with a copy of his report prior to the revocation of his employment offer. It was not until Plaintiff's counsel made a formal request for the information was a copy of the report ultimately provided to Plaintiff. No opportunity was given to Plaintiff to dispute the information in his consumer report.

Remedies for violation of the FCRA is specified under 15 U.S.C. §§1681n and o. Statutory penalties of $100 to $1,000 is authorized for each willful and/or reckless violation of any provisions of the FCRA. 15 U.S.C. §1681n(a)(1)(A). The aggrieved consumer may also recover actual damages, if any for the same.

## B. California CCRRA and Labor Code Claims

In 2011, AB22 was introduced to amend Lab. C. §1024.5 and add Cal. Civ. C. §1785.20.5 to the CCRAA with the intent to generally prohibit the use of consumer credit reports for employment purposes. The California legislature found that "a person's credit score says nothing about his or her character or ability to do a job effectively and responsibly." AB22, September 1, 2011, P. 3. The law became

4

effective on January 1, 2013. However, a consumer credit report was nevertheless procured on Plaintiff.

Under Lab. C. §1024.5(a)(1)-(8), there are several exceptions to the prohibition against procurement of credit reports. These exceptions relate to employment positions within financial institutions and positions where the applicant has access to sensitive consumer financial information. None of these exceptions apply to Plaintiff's position of a medical assistant.

Moreover, even where a position falls within the enumerated exception, the a notice compliant with Civ. C. §1785.20.5 (specifying the applicable exception) must be provided to the consumer *before* a credit report may be procured. Plaintiff alleges that Defendant categorically failed to provide such notice to any California job applicants for whom Defendant procured a credit report. Accordingly, Plaintiff believes that this action is suitable for class determination.

Violation Lab. C. §1024.5 may be enforced through the PAGA, with one a one-year limitations period. Code of Civ. Pro. §340(a). A civil penalty of $100 per violation is authorized for each aggrieved employee. Lab. C. §2699(f)(2). The CCRAA has a 2-year statute of limitations. Civ. C. 1785.33. It authorizes consumers to recover $100-$2,500 in civil penalties for willful and/or reckless violations as well as actual damages.

### C. Settlement Class

The settlement class involves four subclasses. A settlement class member may belong to one or all of these subclasses and his or her recovery will be increased as further discussed below:

- ***FCRA Disclosure Subclass*** (15 U.S.C. §1681b(b)(2)(A)(i)) – All individuals who: (1) applied for employment with Defendant between July 27, 2013 to October 24, 2016 or the date the Court grants

5

preliminary approval, whichever is later; (2) executed a disclosure and authorization form substantially identical to that executed by Plaintiff; and (3) had a "consumer report" prepared within the meaning of the FCRA, which was procured by Defendant.

- ***FCRA Notice Subclass*** (15 U.S.C. §1681b(b)(3)(A)(i)) – All FCRA Disclosure Class Members who: (1) had their employment offers rescinded due to a consumer report procured by Defendant; and (2) allegedly did not receive a pre-adverse action notice before the employment offers were rescinded.

- ***CCRAA Subclass*** (Civ. C. §1785.20.5) – All FCRA Disclosure Class Members who: (1) had a "consumer credit report" prepared on them within the meaning of the CCRAA, which was procured by Defendant; and (2) resided in California at the time the consumer credit report was procured by Defendant.

- ***PAGA Subclass*** (Lab. C. §1024.5) – All FCRA Disclosure Class Members who: (1) applied for employment with USHW on or after June 24, 2014; (2) executed a disclosure and authorization form substantially identical to that executed by Plaintiff; (3) had a "consumer credit report" prepared on them within the meaning of the CCRAA, which was procured by Defendant; and (5) applied for positions which may not have fallen within one of the eight (8) categories enumerated in California Labor Code §1024.5.

SA, P. 5, ¶I.1.27.

### D. Discovery

Prior to the mediation on May 17, 2016, Plaintiff served on Defendant an extensive informal discovery requests. In response, Defendant produced a class list

detailing all consumers (name withheld, but uniquely identified through a consumer report order ID number) for whom they procured a consumer report.

As of May 17, 2016, Defendant procured 3,382 consumer reports. Of those, 33 (.975%) failed their background checks or were not hired. This included 502 (14.84%) California applicants on whom Defendant procured a credit report. Plaintiff obtained the job title and descriptions of these 502 applicants and determined that none of them fell within the exceptions enumerated under Lab. C. 1024.5(a)(1)-(8). Of the 502 California job applicants, 375 fell within the 1-year Private Attorney General's ("PAGA" Lab. C. §2699 *et seq.*) statute of limitations period. Code of Civ. Pro. §340(a). The balance fell outside of the 1-year period and is nevertheless entitled to recovery under CCRAA's 2-year statute of limitations. Civ. C. 1785.33. Since the mediation, the class size has since increased to 4,381 members. The parties anticipate that the class size will not exceed 4,500 by the date of the preliminary approval.

### E. The Payment Structure

The settlement proceeds will be distributed based on a point system. *See* SA, P.18-19, ¶IX.9.6.1. **One (1) point** is assigned to every member of the FCRA Disclosure Subclass who did not receive the FCRA mandated disclosure in the form mandated under 15 U.S.C. §1681b(b)(2). Every class member will belong to this class as they have all signed identical forms before being subject to employment background check reports.

**Ten (10) points** is assigned to every member of the FCRA Notice SubClass who did not receive a copy of the report and a reasonable opportunity to dispute the information before their employment offers were revoked.

**Five (5)** points is assigned to every member of the CCRAA subclass and **one (1)** point is assigned to every member of the PAGA SubClass.

7

Based on the parties' calculation, this translates to approximately $40 per point based on a class size of 4,381 and before any deductions.

### F. **PAGA Payment**

Pursuant to the PAGA, the parties agree to allocate, conditioned upon this court's approval, $37,500 as penalties to the Labor and Workforce Development Agency ("LWDA"). Lab. C. §2699(e). This amount is based on the pre-mediation discovery of 375 applicant who fall within this 1-year PAGA class multiplied by the statutory penalty of $100 per applicant. Lab. C. §2699(f)(2).

### G. **Notice and Opt-Out**

Within 15 days after preliminary approval, Defendant will furnish to the third-party settlement administrator a class list including the name, most current mailing address, telephone number, and social security number (to the extent available to Defendant). SA, P. 10-11, ¶VI.6.1.1. Defendant will also provide the class membership of each subclass that each of the settlement class members belongs to. *Id.*

The address information will be verified by the settlement administrator using the USPS National Change of Address database. SA, P. 11, ¶VI.6.1.2. Skip-tracing of the social security number of the class member will be used if no known or valid mailing address is found. *Id.*

Mail notice will be sent 30-days following preliminary approval via first class U.S. mail, postage prepaid. The proposed notice is attached as Exhibit 1 of the class settlement agreement.

Any settlement class members may opt-out prior to the opt-out deadline defined as 45-days after the mailing of the settlement notice or 75-days after the date of preliminary approval. *See* SA, P.4, ¶I.1.19.

## H. **Attorney's Fees and Expenses and a Service Award to the Class Representative**

The Settlement Agreement provides that Class Counsel may move for the Court to award attorney's fees, costs and expenses to be paid from the Gross Settlement Fund. The Fees Award is in an amount not to exceed 33 and 1/3% of the Settlement Fund or $133,333.33. SA, P. 15, ¶IV.9.2. This amount is less than the Plaintiff's counsel's current lodestar.

Class Counsel may also petition this Court on behalf of the named Plaintiff an incentive award in an amount not to exceed $5,000.00. SA, P. 17, ¶IV.9.3.3.

## I. *Cy Pres* **Recipient**

The parties have designated Center for Employment Opportunities ("CEO") as the *cy pres* recipient. The CEO is a nationwide non-profit organization that is dedicated to assisting job applicants with a conviction to find jobs. *See* http://ceoworks.org/about/what-we-do/mission-vision/, last viewed September 24, 2016.

## IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Rule 23 allows courts to conditionally or provisionally certify a class for purposes of effectuating a settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793-94 (3rd Cir. 1995); *White v.*

*Experian Info. Solutions, Inc.*, 803 F. Supp.2d 1086, 1094 (C.D. Cal. 2011) ("Where, as here, 'the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'"). To certify a class, the court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories listed in Rule 23(b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998); *Legge v. Nextel Communications, Inc.*, CV 02-8676-DSF (VNKX), 2004 WL 5235587, *1 (C.D. Cal. June 25, 2004). The same standards generally apply where certification is sought for settlement purposes only, although issues of manageability at trial are not relevant. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Both Rule 23(a) and Rule 23(b) are satisfied here.

## A. Rule 23(a) Requirements

Under Rule 23(a), one or more persons may sue as representative parties on behalf of a class if: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### a. Numerosity

A class action can only be maintained where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Legge*, 2004 WL 5235587 at *4. But "[t]here is no absolute number at which joinder becomes impracticable. *Legge*, 2004 WL 5235587 at *4 (citing *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L.Ed.2d 319 (1980)). Generally, a class size of

approximately 40 members has been held to meet the numerosity requirement. *See, e.g., Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated and rem'd on other grounds*, 459 U.S. 810 (1982) ("we would be inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, *i.e.,*39, 64 and 71"); *Ashmus v. Calderon*, 935 F.Supp. 1048, 1064 (N.D. Cal. 1996) (certifying a class of 52 members). Since there are 4,381 class members, the numerosity requirement is easily met.

### b. Commonality

Under Rule 23(a)(2), a class must have sufficient commonality, which "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L.Ed. 2d 374 (2011) (quotation omitted). This requirement is construed "permissively." *Legge,* 2004 WL 5235587 at *5 (*citing Hanlon*, 150 F.3d at 1019). Commonality is evaluated as to whether the complaint truly "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551.

"[C]ommonality is often found in consumer fraud and related actions where standardized documents and procedures are used. This is true for violations of FCRA and ECOA." *Legge,* 2004 WL 5235587 at *5 (citing *Clark v. Experian Info. Solutions, Inc.*, 2002 U.S.Dist.LEXIS 20410, *11 (D.S.C. June 26, 2002) common questions predominate in FCRA action, including whether a "particular practice or policy of writing credit reports" was reasonable.)). Here, every Class member's claim stems from Defendant's alleged failure to provide them with disclosures and the procurement of credit report on California consumers. The notices provided to each individual applicant did not vary between applicant to applicant and Defendant

uniformly failed to provide any notice under the CCRAA to any of its California applicants prior to procuring employment credit reports.

Commonality has been found in similar cases including claims for failure to provide pre-adverse action notice. *Reardon v. Closetmaid Corp.,* 2011 U.S.Dist.LEXIS 45373, at *14 ("Here, there are numerous questions of law or fact common to the class. These include, but are not limited to….whether [defendant] relied on derogatory information in consumer reports to deny employment to the sub-class members in violation of the FCRA…"); *Singleton*, 976 F.Supp.2d at 675 (finding common question of "whether [defendant] violated the FCRA by failing to provide employees with copies of their consumer reports and pre-adverse action notice"). *See also Megallon*, *Megallon v. Robert Half Int'l, Inc.,* 2015 U.S.Dist.LEXIS 153584 (D.Or. 2015) (certifying a class action based on identical claims raised in this litigation); *Thomas v. FTS USA, LLC*, 2016 U.S.Dist.LEXIS 2055 (E.D. Va. 2016); *Milbourne v. JRK Residential Am., LLC*, 2014 U.S. Dist. LEXIS 155288 (E.D. Va. 2014); *Manuel v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist.LEXIS 109780 (E.D. Va. 2015).

### c. **Typicality**

For similar reasons, Named Plaintiff's representative claim satisfies the typicality requirement of Rule 23(a)(3). Typicality and commonality are similar and tend to merge. *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *accord Legge*, 2004 WL 5235587 at *8 ("As a result of the uniformity with which [Defendant] treated its customers, the Plaintiffs' experiences and claims in some ways are typical of those of the class."). In

the instant case, Plaintiff contends that each class member suffered the same harm. Accordingly, Plaintiff's claims are typical of the proposed class.

### d.  Adequacy of Representation

To make a determination on adequacy, the Court must evaluate both the Named Plaintiffs and their counsel:

> Resolution of two questions determines legal adequacy: 1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and 2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon*, 150 F.3d at 1020.

All factors support certification here. There is no conflict of interest that would prevent Named Plaintiff or Class Counsel from representing the proposed Class, and Named Plaintiff and Class Counsel have vigorously pursued the Class's claims. Class Counsel are experienced class-action litigators who have successfully represented the Named Plaintiff and putative class in this litigation and settlement negotiations. Information about the qualifications DHF Law, P.C., and A New Way of Life Reentry Project are included in the declarations of Devin H. Fok, and Joshua E. Kim respectively.

### B.  Rule 23(b)(3) Requirements

The Settlement contemplates provisional class certification under Rule 23(b)(3). If the elements of Rule 23(a) are satisfied, then a class action may be certified provided the court finds that certain other requirements under Rule 23(b)(3) are met: 1) questions of law or fact common to class members predominate over any questions affecting only individual members, and 2) a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy. Fed. R.Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. Predominance is similar to, but "far more demanding" than the commonality requirement. *Id.* at 623-24. The predominance requirement is satisfied because common questions present a "significant portion of the case" that can be resolved for all Class members in a single adjudication. *See Gutierrez v. Wells Fargo Bank, N.A.,* 2008 W.L. 4279550, *14 (N.D. Cal. Sept. 11, 2008) (citing *Hanlon*, 150F.3d at 1019-22). As discussed in the commonality and typicality sections above, the most central issue in this litigation is common among all the prospective Class members and the Named Plaintiff. Moreover, it is Plaintiff's contention that the elements of these nearly identical claims could be shown at trial through common evidence regarding Defendant's alleged policies, procedures and practices for sending FCRA and CCRAA notices.

Additionally, adjudicating the facts presented in this action on a class-wide basis would be superior to alternative methods of adjudication. "The superiority requirement is generally satisfied where there are 'multiple claims for relatively small individual sums.'" *Legge*, 2004 WL 5235587 at *12 (quoting *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)). This is because "[w]ithout a class action, the costs of individual litigation as compared to the amount of damages may be prohibitively high," or "the individual plaintiffs' claims are so small that denying class certification would effectively preclude any recovery." *Id.* (recognizing that a class action may not only be the superior method of adjudication of multiple claims with small damages, but may be the only realistic means for class members to adjudicate their claims).

The interests of the Class would not be better served by prosecuting their claims individually. *See* Fed. R. Civ. P. 23(b)(3)(A)-(B). Indeed, a class action is only

feasible means by which individual applicants can effectively challenge Defendant's conduct, given the relatively modest size of individual claims under the FCRA, which provides for statutory damages of only $100-1,000 per violation[3], and the vastly superior resources with which Defendant has to defend itself. It is therefore desirable to litigate the issues in this forum on a class-wide basis. *See id.*, at 23(b)(3)(C).

### C. <u>The Proposed Settlement More Than Satisfies the Standard for Preliminary Approval</u>

The proposed Settlement Agreement in this case, which provides for a non-reversionary monetary recovery of $400,000 more than meets the standard for preliminary approval. On a per-class member basis, this settlement is commensurate with settlement of similar FCRA claims. *See Barel v. Bank of Am.,* 255 F.R.D. 393, 402 (E.D. Pa. 2009) ("The proposed settlement confers $51.96 of value on each class member, which amounts to…52% of the low end of the damages range and 5.2% of

---

[3] While the FCRA does provide for recovery of actual damages, 15 U.S.C. §1681o(a) (actual damages for negligent FCRA violation) and 1681n(a) (actual damages for willful FCRA violation), such damages may only be sought where the damage is result of the violation at issue. *See Caltabiano v. BSB Bank & Trust Co.*, 387 F.Supp.2d 135 (E.D.N.Y. 2005) (debtor suing credit agencies unable to recover actual damages where loan-rate increase was based on market rate rather than credit report). Class members who perceive they have actual damages as a result of failing to receive pre-adverse action notice may opt-out of the Settlement. This ability to opt-out has been held to sufficiently protect those class members in similar cases. *See Egge v. Healthspan Services Co.,*208 F.R.D. 265, 272 (D. Minn. 2002) ("[defendant's] alleged concern that individual class members may be able to recover more in individual actions is adequately addressed by use of the Rule 23(b)(3) opt-out procedure.") (quotation omitted); *Macarz v. Transworld Systems, Inc.*, 193 F.R.D.46, 55 (D. Conn. 2000); *Weber v. Goodman*, 9 F.Supp.2d 163,170, 171 (E.D.N.Y. 1998) (deciding a class action in an FDCPA case where individual claims could hve resulted in recoveries of $1,000 per individual was superior even though the class members would receive no more than $2 in statutory damages for the defendant's FDCPA violation).

the high end of the damages range"); *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665 (D. Md. 2013) ($2.5 million FCRA settlement for a claim-in class of 45,668 potential class members); *Hunter v. First Transit, Inc.*, 09-cv-6178 * 10-cv-7002 (N.D. Ill. Mar. 23, 2011) ($5.9 million FCRA settlement for more than 143,000 class members); *Brown et al. v. Lowe's Companies, Inc., et al.*, 5:13-cv-00079-RLV-DSC (W.D. N.C. 2016) (FCRA settlement, $35 cash or $50 gift card per class member); *Johnson v. Midwest Logistics Sys.*, 2013 U.S.Dist.LEXIS 74201 (S.D. Oh. 2013) ($452,380 common fund with $260 for each consumer who has been subject to an adverse consumer report; and $1,000 for each consumer who has been subject to an adverse consumer report; and was not hired); *Cf Harris v. U.S.Physical Therapy, Inc.*, 2012 U.S.Dist.LEXIS 111844 (D.Nv. 2012) ($1,000 each class member for 47-members of the proposed pre-adverse action notice class); *Townsend v. AIM Integrated Logistics, Inc.*, 4:15-cv-00493-KBB (N.D. Oh. 2015) (automatic payment of $1,000 for 206 class members who were not provided pre-adverse action notice); *Reardon v. ClosetMaid*, 2:08-cv-01730-MRH, 2013 U.S.Dist.LEXIS 169821 (W.D. Pa. 2013) ($400 to approximately 50 pre-adverse action notice class members after the court granted class certification as to these members).

Plaintiff is not aware of any similar PAGA and/or CCRAA settlements of similar as the statute was enacted relatively recently, the above FCRA cases with similar statutory penalty provisions demonstrate that the settlement amount reached in this action is well within what courts have found to be fair and reasonable.

### a. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

As recounted above, the settlement in this case was reached only after extensive formal discovery and after the filing of a formal motion for class certification. This is clear indicia that the settlement was the result of an arm's length

16

negotiation. "An "initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010); *see also Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiff's claims.").

### b. <u>The Settlement Is Adequate and Reasonable</u>

While the exact amount that each class member will recover is unknown until all checks have been cashed, the gross settlement amount of $400,000 is substantial.

For a vast majority of the consumers, the compensation is fair for any and alleged harm that they have suffered due to not receiving notice in the method and manner mandated by the FCRA. The settlement also fairly and adequately compensates California class members who have been subject to credit reports. As fully set forth above, less than 1% of the applicants (33 of 3,382) were denied employment for due to information in their employment background check reports, this means that 99% of the applicants did not suffer any actual damages outside of the statutory penalties authorized under the respective statutes.

Moreover, the statutory penalty of $100 to $1,000 for the FCRA and $100 to $2,500 for the CCRAA is available only if Plaintiff can establish willful violation. 15 U.S.C. §1681n(a)(1)(A);Civ. C. §1785.31(a)(2)(B). If the Defendant's violation was at most negligent, recovery is limited to actual damages. *See* 15 U.S.C. §1681o(a)(1); Civ. C. §1785.31(a)(1).

Viewed in the context of the litigation risks faced, as well as the substantial delay, and costs that class members would have experienced in order to receive proceeds from an adversarially-obtained judgment, not to mention the judicial

resources required, this settlement is in the best interests of the Plaintiff and the Settlement Class members, and should be approved.

### D. The Court Should Approve Dissemination of the Proposed Class Notice

With this motion, Plaintiffs have provided two forms of proposed class notice—the short notice to be mailed and the long form notice to be made available on the settlement website and upon request. Fok Decl., SA, Ex. 1 and 2. These proposed notices include all of the information required by Fed. R. Civ. P. 23(c)(2)(B). The Long Form Notice contains details about the definition of the Class, the proposed Class Counsel, the size of the settlement fund, the methodology for opting out of or objecting to the settlement, the potential size of Plaintiff's request for attorney's fees, expenses, and class representative incentive awards, and the date and location of the final approval hearing. This notice program exceeds the requirements of Fed. R. Civ. P. 23, and should be approved.

## V.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court to grant approval to the proposed settlement.

DATED: September 24, 2016        **DHF LAW, P.C.**

By: ___/s/ Devin H. Fok_____
    Devin H. Fok
    Attorney for Plaintiff

    **DHF LAW, P.C.**
    DEVIN H. FOK, Cal. Bar. No. 256599
    234 E. Colorado Blvd. Floor 8
    Pasadena, CA 91101

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ph: (888) 651-6411
Fax: (818) 484-2023
Email devin@devinfoklaw.com

**A NEW WAY OF LIFE REENTRY
PROJECT**
JOSHUA KIM, Cal. Bar No. 257260
9512 S. Central Boulevard
Los Angeles, California 90002
Ph: (323) 563-3575;
Fax: (323)-563-3445
Email: joshua@anewwayoflife.org

## E-FILING ATTESTATION

By his signature below, counsel for Plaintiff attests that he has on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document and any document e-filed concurrently herewith.

DATED: September 24, 2016            **DHF LAW, P.C.**

By: ___/s/ Devin H. Fok_____
    Devin H. Fok
    Attorney for Plaintiff

    234 E. Colorado Blvd. Floor 8
    Pasadena, CA 91101
    Ph: (888) 651-6411
    Fax: (818) 484-2023
    Email devin@devinfoklaw.com