Devin H. Fok (SBN 256599)
Joseph Lee, Of Counsel (SBN 249435)
**DHF LAW, P.C.**
234 E. Colorado Blvd., 8th Floor
Pasadena, CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023
devin@devinfoklaw.com

Joshua E. Kim (SBN 257260)
**A NEW WAY OF LIFE REENTRY PROJECT**
9512 S. Central Ave.
Los Angeles, CA 90002
Telephone: (323) 563-3575 Ext. 34
Facsimile: (323) 563-3445
joshua@anewwayoflife.org

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESUS X. MIRAMONTES, individually, and as a representatives of the class,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>U.S. HEALTHWORKS, INC.; and DOES 1-10 inclusive,<br>　　　　　Defendants. | CASE NO.: 2:15-CV-05689-SJO-AFM<br><br>**MOTION FOR FINAL APPROVAL**<br><br>Judge: Hon. S. James Otero<br><br>Hearing Date: August 31, 2017<br>Time: 10:00 a.m.<br>Location: Courtroom 1, Spring Street |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Settlement Agreement between Plaintiff Jesus X. Miramontes ("Plaintiff") and Defendant U.S. Healthworks ("Defendant"), if finally approved, will resolve all claims of the Plaintiffs and all members of the class in exchange for Defendant's agreement to pay $400,000 into a common settlement fund. Stipulation and Settlement of Class Action Claims ("SA"), P.3, ¶I.1.13. The settlement is a ***claims-paid*** process involving no reversion. SA, P. 7, ¶II.K. The final class size is 4,198[1] members. Declaration of Corinne Lefler ("Lefler Decl."), ¶¶2 and 3. Class notices were mailed out pursuant to this Court's order. Of all of the mailed notices, 29 were undeliverable. Lefler Decl. ¶6. There were 4 timely opt-outs and no objections. Lefler Decl., ¶¶8, 9, Ex. B.

The payment structure for each class member is as follows:

- One (1) point to every member of the FCRA Disclosure Class[2];
- Ten (10) points to every member of the FCRA Notice Class[3];
- Injunctive Relief only to every member of the CCRAA Subclass[4]; and
- One (1) point to every member of the PAGA Subclass[5];

---

[1] It was previously estimated at 4,381. However, several of those members turned out to be duplicates.

[2] For providing defective FCRA disclosures in violation of 15 U.S.C. 1681b(b)(2).

[3] For failing to provide pre-adverse action notice including a copy of the background check report and a reasonable opportunity to dispute the adverse information contained therein before taking adverse in violation of 15 U.S.C. §1681b(b)(3).

[4] For failing to identify the specific exempt position that allows for the procurement of an employment credit report before procuring the same. *See also* Docket# 64 and 65 where the parties amended the Settlement Agreement to address the Court's concern regarding monetary relief to CCRAA members and converted monetary to injunctive relief.

1

If this Court approves the attorney's fees ($133,333.33); costs ($13,632.80); named Plaintiff's award ($5,000); payment to the California Labor & Workforce Development Agency ($37,500) and (e) administration costs ($22,500), the net recovery for each class member after deductions is estimated to be over $36.61 per point of allocation. Lefler Decl., ¶10. This amount is higher than the parties' estimate at the time of the preliminary approval motion of "approximately $40 per point…before any deductions[6]." Court's Order Granting Preliminary Approval, Docket# 57, ("Order"), P. 3. According to calculations by the third-party administrator, the minimum, maximum and average class member allocation is estimated to be $36,61, $475.93 and $41.81, respectively. Lefler Decl., ¶10.

Based on the foregoing, Plaintiff believes that the parties have fully complied with the Court's preliminary approval order and that the settlement is adequate, fair, and reasonable to each class members and sincerely requests this Court grant final approval of the proposed class settlement.

## II. THE PARTIES' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER

In its Order, this Court expressed a number of pointed concerns. Each of them has since been addressed by the parties. *See* STATEMENT Addressing Issues Raised in February 10, 2017 Minute Order, Docket#67.[7] Specifically, in response to the Court's comments regarding lack of commonality related to Plaintiff's CCRAA claim under Rule 23(b)(3), Plaintiff has sought and obtained approval from this Court of a

---

[5] The PAGA claim is predicated on a violation of Cal. Lab. C. §1024.5 for procuring an employment credit report that does not fall within any of the enumerated exempt positions.

[6] This translates to $400,000 / ($225,533.87 / $36.61) = $64.93 per point before deductions.

[7] For purposes of brevity, Plaintiff will not reproduce the same information in this motion.

2

modification of the party's settlement agreement to convert monetary relief to injunctive relief pursuant to Rule 23(b)(2) for the CCRAA class members. *See* Order, P. 11-12; *See also*, Joint STIPULATION to Amend Order on Motion for Settlement, Docket#64, ("Mtn. to Amend Settlement"), ¶¶4-5; *See also* Order granting the same; Docket#65. This Court reasoned that in order to recover the statutory penalties pursuant to Rule 23(b)(3), Plaintiff is required to show actual harm. Order, P. 11. Since Plaintiff admitted that 99% of the applicants did not suffer any actual damages outside of the statutory penalties authorized under the respective statutes, Plaintiff will be unable to meet the predominance requirement of Rule 23(b)(3). *Id.* Nevertheless, this Court found that Plaintiff can alternatively satisfy Rule 23(b)(2) as no actual harm is required for injunctive relief. *Id.* Accordingly, the parties promptly sought approval from this Court modifying the settlement agreement to provide CCRAA subclass members with injunctive relief rather than monetary relief. The parties request was granted on April 3, 2017. *See* Docket#65. Based on the revised settlement agreement, the CCRAA members will receive the following injunctive relief in lieu of monetary relief:

- Providing the CCRAA Subclass Members with free copies of their credit reports upon request;
- An assurance from Defendant that, for a period of five (5) years beginning on the date of the Court's grant of final approval of the Settlement, individuals who reside in California who are the subject of a credit check in connection with an online application submitted to Defendant shall be provided with the required notices under the California Civil Code.

Mt. to Amend Settlement, ¶5, Ex. 1, Revised Settlement Agreement, ¶9.7.

This injunctive relief is provided in addition to the $400,000 common fund originally contemplated by the parties. The revised agreement does not attempt to

3

1  reduce the original $400,000 common fund amount to be paid by Defendant. *See* Mt.
2  to Amend Settlement, Ex. 1, ¶9.1.1.

3        The revised agreement also clarifies the proper distribution of the PAGA
4  penalty. Pursuant to Cal. Lab. C. §2699(i), "civil penalties recovered by aggrieved
5  employees shall be distributed as follows: 75 percent to the Labor Workforce
6  Development Agency ("LWDA") for enforcement of labor laws….; and 25 percent to
7  the aggrieved employees." Accordingly, ¶9.4.1 of the revised agreement clarifies that
8  $37,500.00 of the $50,000 attributable to PAGA violations shall be paid to LWDA
9  and $12,500 to be distributed to PAGA subclass members.

**A.  Notice Was Provided to All Class Members**

      As part of the Order, this Court ordered the "Settlement Administrator to send Mail Notice to each Settlement Class Member, in a form substantially similar to that attached to the SA [Settlement Agreement], via first class U.S. mail requesting either forwarding or change service. For up to thirty (30) calendar days following the mailing of these notices, the Settlement Administrator will re-mail the notices once using standard U.S. mail to updated addresses obtained from USPS…."

      The appropriate notice[8] was mailed on March 31, 2017 by the Settlement Administrator via first class U.S. mail requesting forwarding address and change service. Lefler Decl., ¶¶2, 4-6. Of the 4,198 class members as provided in the Class List by Defendant, 29 were ultimately returned as undeliverable. *Id.* ¶6. There were a total of 4 opt-outs and no objections. *Id.* ¶8. Accordingly, the mail success rate was 99.3%.

//
//
//

---

[8] Properly reflecting the revised agreement for injunctive relief in lieu of monetary relief for CCRAA members.

4

## III. <u>FINAL APPROVAL SHOULD BE GRANTED</u>

The determination of whether a proposed settlement is fair falls within the sound discretion of the district court. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). Importantly, when evaluating a class action settlement, the court begins its analysis with a presumption of fairness. NEWBERG ON CLASS ACTION §13:45 (5th Ed. 2016) (providing that "a court will presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion"); *accord, Dickerson v. Cable Commc'ns, Inc.*, 2013 WL 6178460, *2 (D. Or. Nov. 25, 2013) ("Courts within the Ninth Circuit put a good deal of stock in the product of an arms-length [sic], non-collusive, negotiated resolution.") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). This is because there is a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *City of Seattle*, 955 F.2d at 1276 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

The Court may approve a proposed settlement only after a hearing and on a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In determining whether a settlement meets these standards, the Ninth Circuit has directed that courts consider a number of factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the presence of governmental participation[9]; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Another element that is often considered is the lack of collusion between the parties. *See Santos v. Jaco Oil Co.,*

---

[9] No governmental entity is involved in this action. Thus, analysis of the same is irrelevant and omitted in this motion.

5

2015 WL 5732829, at *8 (E.D. Cal. Sept. 29, 2015) (providing that a court should consider whether settlement is the product of collusion among the negotiating parties) (internal citations omitted).

The relative degree of importance of each of these factors is dependent on the nature of the claims asserted, the types of relief sought, and the unique facts of the case presented. Here, the Settlement Agreement, when viewed with the guidance provided those relevant factors set forth above, is unquestionably fair, reasonable, and adequate and should be approved so that funds can be distributed to class members.

### A. The Settlement Is More Than Fair, Reasonable, And Adequate In Light Of the Strength, Risk, Expense, And Complexity Of This Action

The Settlement involves a $400,000 common fund to be directly to class members after deduction of costs, attorney's fees, and a discretionary award to the Named Plaintiff. The FCRA portion of the settlement is commensurate with settlement of similar claims. Order, P.16-17. Moreover, Plaintiff has achieved a settlement for PAGA and CCRAA claims that has not yet been done before through any other class action. *Id.*

The risks of continued litigation are significant. In order to prevail in this action, Plaintiff would be required to successfully move for class certification under Rule 23, survive a summary judgment, and receive a favorable verdict capable of withstanding a potential appeal. The risks and costs associated with class action litigation weigh strongly in favor of settlement. The statutory damages authorized under FCRA, 15 U.S.C. §1681n(a) are only available if Plaintiff can establish that Defendant willfully violated the FCRA. *Id*. P. 11. Moreover, Plaintiff's CCRAA and PAGA claims are based on recent statutory enactments lacking in binding precedent. Prevailing in the novel claims as those presented here will entail significant risks.

Accordingly, based on the foregoing, the parties believe that the settlement terms are fair, reasonable, and adequate when accounting for these risks.

Finally, the fact that there were no opt-outs or objections of this settlement reinforce the notion that the settlement is fair, reasonable, and adequate.

### B. The Amount of Discovery Completed and the Character of the Evidence Uncovered

The stage of proceedings when settlement occurred and the extent of the discovery performed up to that point support the reasonableness of the proposed settlement. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (providing that "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair") (citing cases).

Here, there is no question that the parties engaged in discovery sufficient to analyze the claims and entered into informed settlement discussions. The parties exchanged extensive pre-mediation discovery including but not limited to a class list detailing all consumers (name withheld, but uniquely identified through a consumer report order ID number) for whom Defendant procured a consumer report as well as detailed descriptions of all job positions applied for by the consumers.

 As of May 17, 2016 and shortly prior to the date of the parties, mediation, Defendant procured 3,382 consumer reports. Of those, 33 (or .975% failed their background checks or was not hired).  This included 502 (14.84%) California applicants on whom Defendant procured a credit report. Plaintiff obtained the job title and descriptions of these 502 applicants and determined that none of them fell within the exceptions enumerated under Lab. C. 1024.5(a)(1)-(8). Of the 502 California job applicants, 375 fell within the 1-year Private Attorney General's Act's ("PAGA" Lab. C. §2699 *et seq.*) statute of limitations period. Code of Civ. Pro. §340(a). The balance fell outside of the 1-year period and is nevertheless entitled to recovery under

CCRAA's 2-year statute of limitations. Civ. C. 1785.33. Since the mediation, the class size has since increased to 4,198 members because of the passage of time since the mediation. All of these class members have been mailed notice with the exception of the 29 (0.69%), none of whom is among the 33 members in the Notice Subclass, that were returned undeliverable.

### C. The Settlement Was The Product Of Arm's Length Negotiations

As fully set forth in Plaintiff's Motion for Attorney's Fees and Approval of Enhancement Award, P. 2-3, the settlement in this case was reached only after a full day of mediation through Mr. David Rotman, a reputable mediator, and continued settlement discussions for several months thereafter. There can be no doubt that the parties conducted an arm's-length negotiation as there is no evidence of collusion. An "initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010); *see also Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiff's claims.").

### D. No Opt-Outs or Objections

"A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (citing *Hanlon*, 150 F.3d at 1027). Here there was no opt-outs and/or objections to the Settlement.

Out of these 4,198 notices sent, there were only 4 opt-outs and no objections. This represents less than a one percent opt-out rate. Accordingly, Plaintiff's counsel

8

sincerely believes that the class settlement in this case, is fair, reasonable, and adequate to the class members.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court to grant final approval of the proposed settlement.

DATED: July 31, 2017  **DHF LAW, P.C.**

By: ___/s/ Devin H. Fok_____
    Devin H. Fok
    Attorney for Plaintiff

**DHF LAW, P.C.**
DEVIN H. FOK, Cal. Bar. No. 256599
234 E. Colorado Blvd. Floor 8
Pasadena, CA 91101
Ph: (888) 651-6411
Fax: (818) 484-2023
Email devin@devinfoklaw.com

**A NEW WAY OF LIFE REENTRY PROJECT**
JOSHUA KIM, Cal. Bar No. 257260
9512 S. Central Boulevard
Los Angeles, California 90002
Ph: (323) 563-3575;
Fax: (323)-563-3445
Email: joshua@anewwayoflife.org

## E-FILING ATTESTATION

By his signature below, counsel for Plaintiff attests that he has on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document and any document e-filed concurrently herewith.

DATED: July 31, 2017          **DHF LAW, P.C.**

By: \_\_\_/s/ Devin H. Fok_____
    Devin H. Fok
    Attorney for Plaintiff

    234 E. Colorado Blvd. Floor 8
    Pasadena, CA 91101
    Ph: (888) 651-6411
    Fax: (818) 484-2023
    Email devin@devinfoklaw.com