JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | | | |
|---|---|---|---|
| **CASE NO.:** | CV 15-05689 SJO (AFMx) | **DATE:** | September 5, 2017 |
| **TITLE:** | Miramontes v. U.S. Healthworks, Inc. | | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                         Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND APPROVAL OF ENHANCEMENT AWARD** [Docket No. 71]; **GRANTING PLAINTIFF'S MOTION FOR ORDER FOR FINAL APPROVAL OF SETTLEMENT** [Docket No. 74]

This matter is before the Court on: (1) Plaintiff Jesus X. Miramontes's ("Plaintiff") Motion for Attorney's Fees and Approval of Enhancement Award ("Motion for Fees"), filed July 7, 2017; and (2) Plaintiff's Motion for Order for Final Approval of Settlement ("Motion for Final Approval"), filed July 31, 2017. Defendant U.S. Healthworks, Inc. ("Defendant" or "USHW") has not opposed either motion. A hearing on these motions ("Hearing") was held on August 31, 2017. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Fees and **GRANTS** Plaintiff's Motion for Final Approval.

I.      FACTUAL AND PROCEDURAL HISTORY

        A.      Procedural History

Plaintiff initiated the instant putative consumer class action on July 27, 2015 based on USHW's alleged failure to provide him and other similarly situated job applicants a clear, conspicuous, and stand-alone disclosure informing them that a consumer report for employment purposes would be procured, as well as USHW's alleged failure to provide "pre-adverse action notices" that include copies of their consumer reports and notices of their rights under the FCRA. (*See* Compl., ECF No. 1; FAC, ECF No. 27.) Plaintiff asserted the following three causes of action against Defendant: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681(b)(2)(A)(i), 1681(b)(3)(A)(i), and 1681(b)(3)(A)(ii); (2) violation of the California Consumer Credit Reporting Agency Act ("CCRAA"), California Civil Code § 1785.20.5; and (3) violation of California Labor Code § 1024.5. (*See generally* FAC.) For a more complete recitation of the factual and procedural background of this matter, refer to the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Settlement, issued February 10, 2017. (*See generally* Order Granting Pl.'s Mot. for Preliminary Approval of Settlement ("Preliminary Approval Order"), ECF No. 57.)

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: <u>CV 15-05689 SJO (AFMx)</u>　　　DATE: <u>September 5, 2017</u>

The Court made several rulings in its Preliminary Approval Order. First, it granted conditional certification for settlement purposes for three of the four settlement classes outlined in the Stipulation and Settlement Agreement of Class Action Claims ("SA"). (Preliminary Approval Order 13; Decl. Devin H. Fok in Supp. Mot. ("Fok Decl."), Ex. 1 ("SA") ¶¶ 1.27-1.28, ECF No. 54-1.) The proposed Settlement Class in the SA included as follows:

> "FCRA Disclosure Class": All individuals who: (1) applied for employment with USHW between July 27, 2013 to October 24, 2016 or the date the Court grants preliminary approval, whichever is later; (2) executed a disclosure and authorization form substantially identical to that executed by Plaintiff; and (3) had a "consumer report" prepared on them within the meaning of the FCRA, which was procured by USHW. – to date, **4,381** applicants meet this definition

> "FCRA Notice Subclass": All FCRA Disclosure Class Members who: (1) had their employment offers rescinded due to a consumer report procured by USHW; and (2) allegedly did not receive a pre-adverse action notice before the employment offers were rescinded. – to date, **33** applicants meet this definition

> "CCRAA Subclass": All FCRA Disclosure Class Members who: (1) had a "consumer credit report" prepared on them within the meaning of the CCRAA, which was procured by USHW; and (2) resided in California at the time the consumer credit report was procured by USHW. – to date, **502** applicants meet this definition

> "PAGA Subclass": All FCRA Disclosure Class Members who: (1) applied for employment with USHW on or after June 24, 2014; (2) executed a disclosure and authorization form substantially identical to that executed by Plaintiff; (3) had a "consumer credit report" prepared on them within the meaning of the CCRAA, which was procured by USHW; (4) resided in California at the time the consumer credit report was procured by USHW; and (5) applied for positions which may not have fallen within one of the eight (8) categories enumerated in California Labor Code § 1024.5. – to date, **375** applicants meet this definition

(SA ¶¶ 1.27-1.28.) The Court held that the proposed definition for the "CCRAA Subclass" in the SA could not withstand the predominance requirement of Federal Rule of Civil Procedure 23(b)(3), which tests whether common issues of fact in law predominate over individual issues. (Preliminary Approval Order 11.) This is because the CCRAA, unlike the FCRA, requires a showing of actual harm and each class member would have to demonstrate actual injury before being entitled to punitive damages under Rule 23(b)(3). (Preliminary Approval Order 11.) The Court found, however, that Plaintiff's simultaneous request for injunctive relief and certification under Rule 23(b)(2) was proper, as under Rule 23(b)(2) the Plaintiff need only demonstrate that the "party

| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** CV 15-05689 SJO (AFMx)          **DATE:** September 5, 2017

opposing the class has acted or refused to act on grounds that apply generally to the class." (Preliminary Approval Order 11-12; Fed. R. Civ. Proc. 23(b)(2).) The Court thus conditionally certified the CCRAA Subclass under Rule 23(b)(2). (Preliminary Approval Order 12.)

Second, the Court preliminarily held that the plan under the SA for giving notice to Settlement Class Members constituted the best notice practical under the circumstances. (Preliminary Approval Order 14-15.)

Third, the Court preliminarily held that the SA was fair, adequate, and reasonable to the Settlement Class. (Preliminary Approval Order 16-17, 21.) This assessment was based partially on the SA's point system, a settlement fund of $400,000, and a class size of 4,381, which translated to a minimum of $40 per class member. (Preliminary Approval Order 16.) The key provisions of the SA's point system required the Settlement Administrator to:

    (1)    calculate each member's "Individual Settlement Points" by assigning each member:
- one (1) point to every member of the FCRA Disclosure Class;
- ten (10) points to every member of the FCRA Notice Subclass;
- five (5) points to every member of the CCRA Subclass; and
- one (1) point to every member of the PAGA Subclass;

    (2)    calculate the "Class Settlement Points" by aggregating the total number of Individual Settlement Points earned by all Settlement Class Members; and

    (3)    calculate each member's "Individual Settlement Payment" using the formula: ($400,000.00 / Class Settlement Points) x Individual Settlement Points.

(SA ¶ 9.6.1.) The Court noted that the SA described the $400,000 settlement fund as "before any deductions," and requested that the parties provide an explanation of what deductions were contemplated, and what the minimum, median, and mean awards would amount to after those deductions. (Preliminary Approval Order 17.)

Fourth, the Court found that the $5,000 service award to Plaintiff was reasonable and warranted under the circumstances. (Preliminary Approval Order 18-19.) However, the Court noted that the proposed attorneys' fees award described as "not to exceed $133,333.33" was on the high end of attorneys' fees awards in similar cases, and, as a "clear sailing agreement," immediately subject to heightened scrutiny. (Preliminary Approval Order 17-18.) The Court withheld a final determination of this matter pending receipt of a motion for attorneys' fees with the final numbers. (Preliminary Approval Order 18.)

Finally, the Court requested a number of clarifications on the terms and structure of the SA and ordered the parties to file a joint pleading with the requested supplemental information two weeks prior to the Final Approval Hearing. (Preliminary Approval Order 21.)

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| CASE NO.: | CV 15-05689 SJO (AFMx) | DATE: | September 5, 2017 |
|---|---|---|---|

      B.      Post-Issuance Activity

Since the issuance of the Preliminary Approval Order, the following events have occurred: (1) the parties filed a Joint Stipulation to Amend Order on Motion For Settlement (the "Amendment") (Am., ECF No. 64), which was granted by the Court on April 3, 2017 (Order Granting J. Req. to Am. Stip., ECF No. 65); (2) the parties filed a Joint Statement Addressing Issues Raised in February 10, 2017 Minute Order (the "Statement") on July 3, 2017 (Statement, ECF No. 67); and (3) notice was given to each Settlement Class member via first class mail. (Mot. for Final Approval 4.)

First, the Amendment modified the SA primarily in regards to the calculation of each class member's share of the Settlement Fund. In response to the Court's Preliminary Order denying certification of the CCRAA Subclass under Rule 23(b)(3), the parties removed the CCRAA Subclass from the calculation of each Settlement Class Member's "Individual Settlement Points." (Am. 2.) Instead, The CCRAA Subclass members would only be entitled to injunctive relief in the form of a free copy of their credit report from USHW upon request. (Am. 2-3.) In addition, the Amendment clarified that members of the PAGA Subclass would receive equal shares of a designated "PAGA Subclass Payment" in the amount of $12,500, while Defendant would pay an additional $37,500 directly to the Labor and Workforce Development Agency ("LWDA"). (Am. 1.)

Next, the Statement clarified that the deductions referenced in the SA would include: (1) $133,333.33 in attorney's fees; (2) $13,632.80 in costs; (3) the $5,000 named plaintiff award; (4) the $37,500 payment to the LWDA; and (5) administration costs of $22,500. (Statement 3; *see also* Mot. for Final Approval Ex. 2, Decl. of Corinne Lefler ("Lefler Decl.") ¶ 10.)

Finally, notice was mailed to each Settlement Class Member on March 31, 2017. (Mot. for Final Approval 4; Lefler Decl. ¶¶ 2, 4-6.) The Settlement Administrator identified 176 duplicative records and found and updated a total of 528 addresses though the National Change of Address Database ("NCOA"). (Lefler Decl. ¶¶ 2-3.) After these changes, 4,198 records remained on the Class List. (Lefler Decl. ¶ 3.) Twenty-nine (29) mailings were returned as undeliverable and four (4) recipients opted out. (Lefler Decl. ¶¶ 6, 8.)

Plaintiff filed the Motion for Fees on July 7, 2017 and the Motion for Final Approval on July 31, 2017. (Mot. for Fees, ECF No. 71; Mot. for Final Approval, ECF No. 74.) The Court discusses each motion in turn.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 15-05689 SJO (AFMx)</u>     DATE: <u>September 5, 2017</u>

II. <u>DISCUSSION</u>

    A. <u>Motion for Award of Attorneys Fees and Approval of Enhancement Award</u>

In the Motion for Fees, Plaintiff requests $133,333.33 in attorneys' fees, $13,632.80 in costs, a service award of $5,000 for the named Plaintiff, and $22,500 for the class administrator. (Mot. for Fees 12.) These fees are to be deducted from the total Settlement Fund of $400,000, which, in addition to the $37,500 payment to the LWDA, would leave $225,533.87 to be distributed among Class Members (the "Net Settlement Fund"). (Statement 3; Lefl. Decl. ¶ 10.) The resulting minimum class member allocation would be $36.61, the maximum $475.93, and the average $41.81.[1] (Mot. for Final Approval 2; Lefl. Decl. ¶ 10.)

        1. <u>Legal Standard</u>

Federal Rule of Civil Procedure ("Rule") 23(h) provides the authority for a district court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion to award attorneys' fees using either the lodestar or percentage-of-the-fund method. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Garcia v. Gordon Trucking, Inc.*, No. CV 10-00324 AWI, 2012 WL 5364575, at *8 (E.D. Cal. Oct. 31, 2012) ("The choice between lodestar and percentage calculation depends on the circumstances.") (citation omitted).

The lodestar method takes into account counsel's reasonable hours and counsel's reasonable hourly rate and, if necessary, a multiplier thought to compensate for various factors. *See Franco*, 2012 WL 5941801, at *18 (citation omitted). A percentage analysis involves an award of a percentage of the class recovery. *State of Fla. v. Dunne*, 915 F.2d 542, 544-45 (9th Cir. 1990); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[N]early all common fund awards range around 30%.") A percentage amount can be adjusted upward or downward based on relevant factors including: 1) the extent to which class counsel "achieved exceptional results for the class"; 2) whether the case

---

[1] These numbers represent the allocations to the FCRA Disclosure Subclass and the FCRA Notice Subclass, which have 4,198 members and 42 members, respectively. (*See* Lefl. Decl. ¶ 10.) In addition, the $12,500 PAGA Subclass Payment would be divided equally among PAGA Subclass members. (*See* Am. 1.) The Court notes that there appears to be a few errors in the calculation of the class allocations and the description of the payment structure outlined in the Motion, but finds that these errors do not prejudice the class because the final allocations would be at or above the described minimum, maximum, and average class allocations. (*See* Transcript for proceedings held on 8/31/17 ("Transcript") 10-12, ECF No. 78.)

MINUTES FORM 11                                                                                      __ : __
CIVIL GEN                                    Page 5 of 11                      Initials of Preparer _____

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority _____<br>Send _____<br>Enter _____<br>Closed _____<br>JS-5/JS-6 _____<br>Scan Only _____ |
|---|---|---|

CASE NO.: **CV 15-05689 SJO (AFMx)**       DATE: **September 5, 2017**

was risky or burdensome for class counsel; 3) whether counsel's performance generated benefits beyond the cash settlement fund; and 4) whether the case was handled on a contingency basis. *Resnick v. Fran (In re Online DVD Antitrust, Litig.)*, 779 F.3d 934 (9th Cir. 2015).

In using either method, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Garcia v. Gordon Trucking, Inc.*, No. CV 10-00324 AWI, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (citation omitted). "Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar are the exception rather than the rule." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). Under the percentage-of-the-fund method, twenty-five percent (25%) of the recovery is the "benchmark" for attorneys' fees calculations, and a district court must state with particularity the reasons for departing from that benchmark if so warranted. *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000). A district court may base an attorneys' fees award based on net or gross recovery so long as the end result is reasonable. *Id.* at 1258.

Plaintiffs are also entitled to recover reasonable litigation expenses as part of their overall award. *See* Fed. R. Civ. Proc. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). Courts have discretion to reimburse for expenses such as travel, photocopying, computer legal research, postage, and consulting and expert witness fees. *See Rutti v. Lojack Corp., Inc.*, No. CV 06-00350 DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366–67 (N.D. Cal. 1996).

        2.    <u>Plaintiff's Attorneys' Fees Under the Percentage-of-the-Fund Method</u>

Plaintiff argues that a 33.33% percentage-of-the-fund award of attorneys' fees is appropriate for several reasons. First, Plaintiff's claims regarding Defendants' illegal procurement of employment credit reports in violation of CCRAA and the deriviative PAGA action are "the first of [their] kind[,]" with no established legal guidance or precedent. (Mot. for Fees 5.) Second, Plaintiff argues that the Supreme Court's grant of certiorari in *Spokeo Inc. V. Robins*, 742 F.3d 409 (9th Cir. 2014), which directly addresses whether federal courts have jurisdiction over private rights of action largely similar to this one, significantly increased the risk that an adverse ruling would result in dismissal of Plaintiff's claims. (Mot. for Fees 6.) Third, Plaintiff argues that the award of an injunction and an average per member allocation of $41.81 after the deduction of attorneys' fees falls well within the range of FCRA settlements. (Mot. for Fees 8.) Fourth, Plaintiff argues that Plaintiff's counsel faced significant risk based on the complexity of the action and their agreement to undertake the action on a contingency fee basis. (Mot. for Fees 10.) Finally, Plaintiff alleges that if the attorneys' fees were calculated based on the attorneys' hours and hourly rates, the amount would total $157,285.00. (Mot. for Fees 9.) This calculation is based on 315.9 total

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |
|---|---|---|

**CASE NO.:** CV 15-05689 SJO (AFMx)         **DATE:** September 5, 2017

attorney hours spent on the case and a billing rate of $625, $425, and $450 for each of the three attorneys who contributed to this total. (Mot. for Fees 8-9.)

The Court agrees that a percentage-of-the-fund approach is appropriate here as the Settlement Fund only amounts to $400,000 and Plaintiff's alleged lodestar, without a multiplier, is significantly higher than the requested amount. The Court also agrees that the complexity of the action, the issues of first impression, and the risk to counsel warrant an increase to the 25% benchmark established by the Ninth Circuit. For this reason, the Court **GRANTS** the award to Plaintiff for attorneys' fees of $133,333.33, or 33.33% of the $400,000 Settlement Fund.

        3.      <u>Plaintiff's Requested Reimbursement for Costs</u>

Plaintiff also requests $13,632.80 in costs, a service award of $5,000 for the named Plaintiff, and $22,500 for the class administrator. Plaintiff's request for reimbursement of $13,632.80 is in large part Plaintiff's portion of the cost of mediation between the parties, a total of $10,750. (Mot. for Fees 10.) The balance of this amount includes state and federal filing fees, as well as travel expenses incurred during mediation. (Mot. for Fees 10-11.) Many cases have held awards of this amount and type to be reasonable. *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (holding that class representative payments of $5,000 and Administrator's fees of $20,000 are appropriate for a class size of 150); *Garcia v. Gordon Trucking*, No. 1:10–CV–0324–AWI–SKO, 2012 WL 5364575, at *3 (E.D.Cal. Oct. 31, 2012) (approving $25,000 administrator fee awarded in wage and hour case involving 1,868 potential class members); *Singleton v. Domino's Pizza*, LLC, 976 F. Supp. 2d 665, 690 (D. Md. 2013) (holding that reimbursement for $13,339.84 in filing fees and travel costs and class representative payments of $5,000 total are reasonable). The Court finds that Plaintiff's request for costs are reasonable.

    B.    <u>Motion for Final Approval of Class Action Settlement</u>

        1.      <u>Legal Standard</u>

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlements deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.'" *Class Plaintiffs v. City*

| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** CV 15-05689 SJO (AFMx)     **DATE:** September 5, 2017

*of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).

Although the "factors in a court's fairness assessment will naturally vary from case to case," *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011), courts generally consider the following:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993)); *see also Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court addresses the relevant factors in turn and concludes that the proposed settlement, if accurate, is sufficient to warrant final approval.

    2.    <u>The Proposed Settlement is Fair, Reasonable, and Adequate</u>

        a.    <u>Strength, Risk, Expense, and Complexity of the Action</u>

Where the plaintiffs' claims are somewhat tenuous or establishing liability would be difficult, this first factor favors settlement due to the "uncertainties associated with continued litigation." *DIRECTV*, 221 F.R.D. at 526; *see, e.g., In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014); *In re Portal Software, Inc. Sec. Litig.*, No. CV 03-05138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007). In addition, "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of this settlement." *Milstein v. Huck*, 600 F. Supp. 254, 367 (E.D.N.Y. 1984) (citation omitted). Finally, the court must consider whether there is a risk that the class will be decertified. *See In re Toys R Us*, 295 F.R.D. at 452; *McKenzie v. Federal Exp. Corp.*, No. CV 10-02420 GAF, 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification]. This factor therefore weighs in favor of final approval of the settlement.").

Plaintiff argues that establishing liability would be difficult because the statutory damages authorized under the FCRA are only available if Plaintiff can establish that the violation was willful, and Plaintiff's CCRAA and PAGA claims are based on recent statutory enactments lacking in

Case 2:15-cv-05689-SJO-AFM Document 80 Filed 09/05/17 Page 9 of 11 Page ID #:882

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | \_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_ |
|---|---|---|---|

CASE NO.: <u>CV 15-05689 SJO (AFMx)</u>　　　　DATE: <u>September 5, 2017</u>

binding precedent. (Mot. for Final Determination 6.) Moreover, the class subject to the greatest amount of harm includes only 42 members, increasing the risk that the class will be decertified. (*See* Preliminary Approval Order 7.) The Court finds that these factors weigh in favor of settlement.

　　　　b.　　Amount Offered in Settlement

"In assessing the consideration obtained by the class members in a class action settlement, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *DIRECTV*, 221 F.R.D. at 527 (citing *Officers for Justice*, 688 F.2d at 628). The amended SA includes a payment structure as follows. Defendant will pay $400,000 into a common settlement fund. (SA ¶ 1.14.) This fund will be reduced by the Court's award of attorneys fees and costs, a total requested amount of $174,466.13, bringing the Net Settlement Fund to $225,533.87. (Statement 3; Lefl. Decl. ¶ 10.) After payment of the $12,500 designated to the PAGA subclass and the $37,500 due to the LWDA, the remaining $175,533.87 would be divided among the 4,198 class members, with one (1) point to every member of the FCRA Disclosure Class and ten (10) points to each member of the FCRA Notice Class. (Mot. for Final Approval 1; Lefl. Decl. ¶¶ 2-3, 10.) The resulting minimum class member allocation would be at least $36.61, the maximum $475.93, and the average $41.81. (Mot. for Final Approval 2; Lefl. Decl. ¶ 10.) The CCRAA Subclass would also be entitled to injunctive relief in the form of a free copy of their credit report from USHW upon request. (Am. 2-3.)

As held in the Preliminary Approval Order, the class member allocations fall within the range of settlement for similar FCRA claims. (Preliminary Approval Order 16 [citing *Barrel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) ("[t]he proposed settlement confers $51.96 of value on each class member, which amounts to . . . 52% of the low end of the damages range and 5.2% of the high end of the damages range"); *Singleton*, 976 F. Supp. 2d 665 ($2.5 million FCRA settlement for 45,668 potential class members, amounting to $54.74 per class member); *Hunter v. First Transit, Inc.*, No. 09-cv-6178 (N.D. Ill. Mar. 23, 2011) ($5.9 million settlement for more than 143,000 class members, or an average award of $41.26)]. The Court noted at the Hearing that the injunction awarded to the CCRAA Subclass appears to have little value, as credit reports are freely available from multiple sources. (Transcript 9:19-10:10.) In response, Plaintiff's counsel represented that the 42 members of the FCRA Notice Subclass, who are the most harmed by Defendant's conduct, have a substantial minimum allocation of $402.71 under the proposed payment structure. (Transcript 19:19-21:24.) The Court therefore finds that the amount offered in settlement is fair, and that this factor weighs in favor of approval.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  ___
Send      ___
Enter     ___
Closed    ___
JS-5/JS-6 ___
Scan Only ___

| CASE NO.: | CV 15-05689 SJO (AFMx) | DATE: | September 5, 2017 |
|---|---|---|---|

      c.      <u>Extent of Discovery Completed and the Stage of Proceedings</u>

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *DIRECTV*, 221 F.R.D. at 528 (internal quotation marks and citation omitted). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.* (citation omitted). Additionally, where the parties reach a settlement after conferring with a mediator, this "support[s] the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA, 2012 U.S. Dist. LEXIS 166704, at *15 (citing *Satchell*, 2007 WL 1114010, at *4).

This factor supports final approval. As discussed in the Court's Preliminary Approval Order, the parties engaged in "extensive discovery" and participated in a full day of mediation. (Preliminary Approval Order 16.)

      d.      <u>Experience and Views of Counsel</u>

"Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the Class." *See, e.g., DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). The Court found that "Plaintiff is represented by experienced class action attorneys who are rising stars in the legal field." (Preliminary Approval Order 9.) This factor weighs in favor of final approval.

      e.      <u>Reaction of Class Members to Proposed Settlement</u>

"In order to gauge the reaction of other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *In re Toys R Us,* 295 F.R.D. at 455-56 (citations omitted). "The absence of a single objection" to a proposed settlement weighs in favor of granting final approval because "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529 (collecting cases); *see also Ontiveros,* 303 F.R.D. at 371-72 (citation omitted).

Notice was mailed to the 4,198 class members on March 31, 2017. (Mot. for Final Approval 4, Lefler Decl. ¶¶ 2, 4-6.) Twenty-nine (29) mailings were returned as undeliverable, four (4) recipients opted out, no recipients objected, and no objectors appeared at the Hearing. (*See* Lefler Decl. ¶¶ 6, 8.) The mail success rate was thus 99.3%. (Mot. for Final Approval 4.) This factor weighs in favor of approval.

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only |
|---|---|---|

**CASE NO.:** CV 15-05689 SJO (AFMx)   **DATE:** September 5, 2017

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff Jesus X. Miramontes's Motion for Attorney's Fees and Approval of Enhancement Award and **GRANTS** Plaintiff's Motion for Order for Final Approval of Settlement. This matter shall close.

MINUTES FORM 11
CIVIL GEN                         Page 11 of 11                    Initials of Preparer _____